IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETER G. STACK;
SANDRA MANN-STACK

8: 06 CV 00521-T 27 EAJ

    Plaintiffs,

-vs-

MASON & ASSOCIATES; JENNIFER
EBANKS PAULLIN; ANNE MASON;
NANCY HUNT; JOHN MARKWARDT;
CLAY HOLSTSINGER; SHAWN YESNER;          NO.
MARTIN PONS; SHAPIRO & FISHMAN,
PETER LANNIS; SUSAN BOSTANCHE,
ALLAN PARRISH; STERN & MCSURDY, P.A.;
FOREST MCSURDY; CATHERINE HARLAN;
BRUCE BOYER; NELLIE KHOUZAM;
W. DOUGLAS BAIRD; LINDSEY SCHATZMAN;
BACEN & KAPLAN P.A.; RENEE M. JORDON;
PAUL GLENN; BRANDT C. DOWNEY III; A.C.J.
CAMPBELL; ALTENBERND C.J.; J.J. SALCINES;
ACJ PARKER; NORTHCOFT; CASANVERA, JJ;
VALANTI; BATTAGLIA, ROSS, DICUS &
WEIN, P.A.; KELLI HANLEY CRABB;
CHARLES R. WILSON; PATRICIA WILLINS;
STEPHEN G. WATTS, P.A., STEPHEN G. WATTS;
HOMESIDE LENDING/WASHINGTON MUTUAL;
FEDERAL HOME LOAN MORTGAGE CORP.
(FREDDIE MAC); AMERICAN EXPRESS;          AND DEMAND FOR
FLORIDA BAR ASSOCIATION;                   JURY TRIAL
AND OTHERS TO BE NAMED.

    Defendants.

_____/

## COMPLAINT

1. This action is brought under the Racketeer Influenced and Corrupt

    Organizations Act (RICO), 18 U.S.C.A. §1961 et seq., 18 U.S.C.A. §1964 (c)

    by reason of violation of section 1962 (a) and (c), 18 U.S.C.A. section 1341

TB 36439
₱250-

(mail fraud), 18 U.S.C.A. Section 1344 (bank fraud), 18 U.S.C.A. section 657 (theft and embezzlement).

2. Sherman Antitrust Act 15 U.S.C.A. § 1-2, 15 U.S.C.A. §15 and 26. (Clayton Act)

## INTRODUCTION

3. This is an action brought to "redeem a pervasive, corrosive and pernicious pattern of corruption" by multiple attorneys, judges and the Florida Bar Association.

4. Specifically under 18 U.S.C.A. 1961 et seq., (RICO) section 1341 (mail fraud), the defendants engaged in a series of related acts, extending over a substantial period of time, continuing to the present, to defraud the plaintiffs of money and property with resultant injury to their business or property.

5. The defendants willfully and knowingly devised schemes to defraud the plaintiffs and used false representation to obtain money and property.

6. The defendants used the U.S. Postal Service by mailing or causing to be mailed for the purpose of executing the schemes to defraud.

7. This occurred during a seven (7) year period in a mortgage foreclosure case, Homeside Lending vs. Peter Stack and Sandra Mann-Stack, and in a case, American Express vs. Peter Stack.

## SCHEME A: CONSPIRACY OF SILENCE

8. The Florida Bar is an association organized and existing under the laws of the State of Florida. All persons who practice law in the State of Florida are required to become members of the State Bar.

2

9.  One of the functions of the State Bar is to insure that all members act in accordance with the standards of professional conduct as codified in the Rules Regulating the Florida Bar, its cannons of ethics, and Rules for Reporting Professional Misconduct.

10. One function of the Florida Bar is to receive complaints against those association members alleged to have violated the cannons of ethics and to conduct investigations and hold hearings to determine whether formal sanctions against the named party would be appropriate.  Formal sanctions include reprimand, suspension, and disbarment from the practice of law in the State of Florida.

11. For many years the defendants have continuously engaged in an unlawful combination and conspiracy to ignore and look the other way when advised of misconduct and fraud by attorneys.

12. Other attorneys, all members of the Florida Bar, by a conspiracy of silence have shown their willingness to aid and abet this pattern of misconduct.

13. As members of the Florida Bar, they are legally obligated to follow the Rules Regulating the Florida Bar, but it is understood and they all know that part of being a member of the Florida Bar is to protect its members.

14. The Florida Bar is self-regulating.  Self-regulation avoids inspection by insolating them from close scrutiny.  This provides the ability to pick and choose which laws they will follow, placing them above the law and facilitating wrongdoing.

3

15. The Florida Bar will not self implode by looking at the ineptness of a large number of attorneys practicing law or the many cases of illegal actions which occur to the detriment of the public.

16. In order for the Florida Bar and its members to function, they must maintain an unimpeachable impression that they are in fact protecting the public and the administration of justice.

17. Too much inquiry would bring outside oversight.

18. This self-preservation is one of their reasons for existing along with the ability to continue to collect and preserve attorney fees, and remain unchallenged.

19. The playing field is not level.  This is how it works.

### SCHEME B: FALSE BILLING (1998-TO PRESENT)

20. Shapiro & Fishman and Mason & Associates, despite irrefutable proof that there were multiple defendants included in the case, Homeside Lending vs. Peter Stack, by mistake, over a seven (7) year period, first Shapiro & Fishman and then Mason & Associates made no correction and continued to bill for service to defendants who should not be included.  The U.S. Mail was used each time.

21.     It continues to occur with no indication it will stop or be corrected.

22. Fees in each case were paid by Homeside Lending, and then by Washington Mutual, even after they were informed that they were incorrect.

23. Since the plaintiff is libel for attorney fees, Homeside Lending and Washington Mutual did not do their fiduciary duty in monitoring attorney fees

4

and making sure they were accurate. This occurred repeatedly even after the plaintiffs informed them.

24. There is a concealment of these frauds by multiple attorneys and judges all members of the Florida Bar who follow a conspiracy of silence.

25. Despite irrefutable fraud by the defendants and co-conspirators, all members of the Florida Bar, by not doing their duty to the public, not following the law, or the Florida Bar Rules, are actively facilitating and implementing a continual pattern of ongoing fraud.

26. Attorneys and judges are knowledgeable of the law and know lack of action is illegal. By knowing a fraud has been perpetrated on the plaintiffs by a third party, the failure to alert the Florida Bar or in the cases of the judges, the failure to act themselves, constitutes aiding and abetting fraud.

27. Each failure to act by the defendants occurred every time the plaintiffs informed the defendants of the errors in motions to the court and each time the defendants lawyers continued to demand fees in motions to the court, all with service by U.S. Mail, and the judges signed orders giving the attorneys fees demanded and having these orders mailed to the plaintiffs by the U.S. Postal Service.

## SCHEME C: EXTORTION

28. The Amended Final Judgment in Homeside Lending vs. Peter Stack was paid in full by the plaintiffs September 20, 2001.

29. Mason & Associates in spite of receiving the court determined Amended Final Judgment amount, refused to give a Satisfaction of Judgment to the plaintiffs.

5

30. Using the U.S. Mail, they demanded more fees that were inaccurate and extortive.

31. The title to the house would not be released until additional fraudulent attorney fees were paid.

32. In this extortive scheme, the attorneys with a combination of resources, overwhelm the mortgagee by arbitrarily adding fees which they know will go unchallenged by a mortgagee with limited resources and knowing they will be rubber stamped by the courts as being correct.

33. They also know that their fellow attorneys and Florida Bar members will remain silent to fee challenges and take no legal action against them.

34. Again, they are actively facilitating and implementing and ongoing fraud by taking no action.

## SCHEME D: PROTECTING ATTORNEY AGAINST CRIMINAL ACTIONS

35. Stephen Watts, the attorney for the plaintiffs lied to his client and the court about depositing money to satisfy the Amended Final Judgment for a mortgage foreclosure in the court registry.

36. He sent a motion stating he had deposited the money into the court registry by the U.S. Mail and service by U.S. Mail for Mason & Associates.

37. Instead the money was in his escrow account for his own purposes and kept until March of 2002 approximately two (2) months after he withdrew from the case and a total of almost six (6) months after receiving money for payment of Amended Final Judgment in a mortgage foreclosure case (September 2001).

38. Using U.S. Mail he demanded additional money from the plaintiffs, stating the court clerk required additional funds in addition to those deposited in the court registry, which in fact had not occurred.

39. Using U.S. Mail, Watts also told Mason & Associates that he had deposited the money into the court registry.

40. These frauds perpetrated by Stephen Watts were presented to multiple courts.

41. In spite of being notified of fraud, multiple attorneys and judges, all members of the Florida Bar, refused to hold Watts accountable or follow-up in any way with their legal obligation to report to the Florida Bar Disciplinary Board and/or the judges themselves taking action.

42. Fraud and inaccurate court records still stand.

43. The defendants enjoined in a conspiracy of silence which Watts knew and counted on to facilitate and implement his fraud to continue to hold onto the money in his escrow account for his own benefit.

44. The defendants all know the above actions were fraudulent but broke the law themselves by doing nothing and allowing the fraud to succeed. Protecting attorneys against criminal action has occurred since the beginning of the case, Homeside Lending vs. Peter Stack, when the initial filing attorney Parrish, knowingly allowed fraudulent claims and false statements to be presented to the court by the US Attorney, Assistant US Attorney and Battaglia, Ross Dicus & Wein, P.A. Despite irrefutable evidence, the attorneys and the court took no action. In the case, American Express vs. Peter Stack, property owned by Sandra Mann was fraudulently obtained by American Express.

7

Despite misrepresentation and illegal acts by the attorneys involved, the

presiding judges failed to take any action other then to manipulate the court

record for the attorneys benefit.

## SCHEME E: MORTGAGE FORECLOSURE PRICE FIXING

45. Mortgage foreclosures are used to generate fraudulent attorney fees and pad

    bills with arbitrary legal fees.

46. There is a monopoly on legal fees that the mortgagee has to pay in a

    foreclosure case.

47. The mortgagee has no say in what fees are charged and the mortgage holder

    and the court are depended on to make sure they are correct.

48. The mortgagee is usually in a poor financial state and at a disadvantage

    because of wealth and resources by the attorneys.  This situation is counted on

    by the attorneys who usually go unchallenged on their fees.

49. The attorneys have been given a monopoly by the court and this is further

    strengthened by a code of silence by other attorneys in the case, and the

    judges who look the other way and rubber stamp fees as reasonable.

50. The court refuses to review or acknowledge fraudulent fees and it is counted

    on that the mortgagee does not have the means to challenge this in court.

51. The plaintiff is compelled to pay a substantially higher price to redeem a

    mortgage foreclosure than would be but for violation of monopoly and price

    fixing.

8

## JURISDICTION AND VENUE

52.  This court has subject-matter jurisdiction pursuant to 18 U.S.C.A. § 1964 (c)

(RICO)   § 28 U.S.C.A.   § 1331 (federal question)

§1337 (a) (regulation of commerce)

§1367 (supplemental jurisdiction)

52. Venue for the RICO claims properly lies in this judicial district pursuant to 18

U.S.C.A. §1965 (a) and (b) in that (a) the majority of defendants reside in, or

transact their affairs here, and/or (b) to the extent that some defendants reside

in another district, the ends of justice require that they be summoned here

because (a) the relevant documents are found in this judicial district (b) the

majority of the fact witnesses and defendants reside in this judicial district (c)

the claims upon which plaintiffs action is based all arose out of transactions

occurring within this judicial district.

## JURISDICTION AND VENUE SHERMAN ANTITRUST

53.  This court has subject matter jurisdiction pursuant to 15 U.S.C.A. section 1

and section 2 and 15 U.S.C.A. section 15 and 26 as amended and supplemented

commonly known as Clayton Act.

28 U.S.C.A.    §1331 (federal question)

§1337 (regulation of commerce)

§1367 (supplemental jurisdiction)

## VENUE

53. The plaintiffs and defendants' principal places of business and the unlawful

    acts and violations herein described have been conceived, carried out, and

    made effective and performed in the Middle District of Florida.

## PARTIES

### PLAINTIFFS

54. Peter G. Stack resides in Pinellas County, Florida.

55. Sandra Mann-Stack resides in Palm Harbor, Florida.

56. They both were defendants in a mortgage foreclosure case that required the

    use of the services offered by the defendants and members of the Florida Bar.

57. Peter G. Stack was a defendant in a case American Express vs. Peter Stack

    that required use of services offered by the defendants and members of the

    Florida Bar.

### DEFENDANTS

58. MASON & ASSOCIATES, a law firm organized and existing under the laws

    of the State of Florida.  Maintains offices and transacts business in the middle

    district of Florida.  Principal Office- 17757 US Hwy. 19 North, Suite 500,

    Clearwater, Florida 33764.

59. JENNIFER (EBANKS) PAULLIN is a citizen and resident of Florida.  She is

    an attorney with the law firm Paullin Law Office with her principal place of

    business at 12121 Little Rd., #214, Hudson, Florida 34667-2924.  She

    previously worked for Mason & Associates.

60. <u>ANNE MASON</u> is a citizen and resident of Florida. She is a member of the law firm Mason & Associates with her principal place of business at 17757 US Hwy. 19 North, Suite 500, Clearwater, Florida 33764.

61. <u>NANCY HUNT</u> is a citizen and resident of Florida. She is a member of the law firm Douglas C. Zahm, P.A., with her principal place of business at 18830 US Hwy. 19 North, Suite 300, Clearwater, Florida 33764-5123. She previously worked for Mason & Associates.

62. <u>JOHN MARKWARDT</u> is a citizen and resident of New Jersey. He is a member of the law firm Kent & McBride, Pc, with his principal place of business at 1040 Kings Hwy. N., Suite 600, Cherry Hill, New Jersey 08034-1921. He previously worked for Mason & Associates.

63. <u>CLAY HOLTSINGER</u> is a citizen and resident of Florida. He is a member of the law firm Kass Shuler, with his principal place of business at 1505 N. Florida Ave., Tampa, Florida 33602-2613. He previously worked for Mason & Associates.

64. <u>SHAWN YESNER</u> is a citizen and resident of Florida. He is a member of the law firm Shawn M. Yesner, P.L., with his principal place of business at 1902 W. Main St., Tampa, Florida 33607-4322. He previously worked for Mason & Associates.

65. <u>MARTIN PONS</u> is a citizen and resident of Florida. His principal place of business is at Sunset Office Park, 9370 S.W. 72nd, Suite A100, Miami, Florida 33173-5450 in the Southern District of Florida.

11

66. SHAPIRO & FISHMAN a law firm organized and existing under the laws of the State of Florida. They maintain an office and transact business in the Middle District of Florida. Their principal office is at 5429 Beaumont Center Blvd., Suite 800, Building 8, Tampa, Florida 33634.

67. PETER E. LANNINS is a citizen and resident of the State of Florida. He is an attorney with the law firm Awerbach and Cohn, P.A., with his principal place of business at 2600 McCormick Dr., Suite 235, Clearwater, Florida 33759-1059. He previously worked for Shapiro & Fishman.

68. SUSAN BOSTANCHE is a citizen and resident of the State of Florida. She is an attorney with the law firm Bethlehem Law Group C/O Susan Bostanche with her principal place of business at P.O. Box 272999, Tampa, Florida 33688-2999. She previously worked for Shapiro & Fishman.

69. ALAN PARRISH is a citizen and resident of the State of Florida. He is an attorney with Stewart Title & Guaranty Company with his principal place of business at 3401 W. Cypress St., Tampa, Florida 33607-5007. He previously worked for Shapiro & Fishman.

70. STERN & MCSURDY, PA a law firm organized and existing under the laws of the State of Florida. It maintains and transacts business in the southern district of Florida. Their principal office is 801 South University Drive, Suite 500, Plantation, Florida 33324.

71. FORREST MCSURDY is a citizen and resident of the State of Florida. He is an attorney with the law firm Stern & McSurdy, PA. His principal place of business is 801 South University Drive, Suite 500, Plantation, Florida 33324.

72. <u>CATHERINE HARLAN</u> is a citizen and resident of the State of Florida. She is a retired judge in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Civil Division.

73. <u>BRUCE BOYER</u> is a citizen and resident of the State of Florida. He is a circuit judge in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Civil Division.

74. <u>NELLIE KHOUZAM</u> is a citizen and resident of the State of Florida. She is a circuit judge in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Civil Division.

75. W. DOUGLAS BAIRD is a citizen and resident of the State of Florida. He is a circuit judge in the Circuit Court of the Sixth Judicial Circuit and for Pinellas County, Florida Civil Division.

76. <u>LINDSEY SCHATZMAN</u> is a citizen and resident of the State of Florida. She is an attorney with her principal place of business 1320 South Dixie Highway, Penthouse 1275, Coral Gables, Florida 33146.

77. <u>BACEN & KAPLAN P.A.</u> a law firm organized and existing under the laws of the State of Florida. They maintain an office and transact business in the Southern District of Florida. Their principal place of business is 201 East 12th Street, Ft. Lauderdale, Florida 33316.

78. <u>RENEE M. JORDON</u> is a citizen and resident of the State of Florida. She is an attorney and member of the law firm Bacen & Kaplan, PA, with her principal place of business 501 South East 12th Street, Ft. Lauderdale, Florida 33316.

13

79. <u>PAUL M. GLENN</u> US Bankruptcy Judge, Middle District of Florida, Tampa
    Division.  801 North Florida Avenue, Tampa, Florida 33602-3899.

80. <u>BRANDT C. DOWNEY III</u> is a citizen of the State of Florida.  He is a circuit
    court judge of the Sixth Judicial Circuit in and for Pinellas County, Florida,
    Civil Division.

81. A.C. J. Campbell  Appellate Judge 2nd District Court of Appeal, P.O. Box
    327, Lakeland, Florida 33802 .

82. Altenbernd  C.J.   Appellate Judge 2nd District Court of Appeal, P.O. Box
    327, Lakeland, Florida 33802 .

83. J.J. Salcines  Appellate Judge 2nd District Court of Appeal, P.O. Box 327,
    Lakeland, Florida 33802 .

84. ACJ Parker Appellate Judge 2nd District Court of Appeal, P.O. Box 327,
    Lakeland, Florida 33802.

85. Northcoft Appellate Judge 2nd District Court of Appeal, P.O. Box 327,
    Lakeland, Florida 33802 .

86. Casanvera, JJ Appellate Judge 2nd District Court of Appeal, P.O. Box 327,
    Lakeland, Florida 33802.

87. Vallanti- Appellate Judge 2nd District Court of Appeal, P.O. Box 327,
    Lakeland, Florida 33802.

88. C.J. Altenbernd- Appellate Judge 2nd District Court of Appeal, P.O. Box 327,
    Lakeland, Florida 33802 .

89. <u>BATTAGLIA, ROSS, DICUS & WEIN PA</u>  is a law firm organized and
    existing under the laws of the State of Florida.  It maintains and transacts

business in the Middle District of Florida. Their principal office is 980 Tyrone Blvd., St. Petersburg, Florida 33743.

90. KELLI HANLEY CRABB is a citizen and resident of the State of Florida. She is an attorney and member of the law firm Battaglia, Ross, Dicus & Wein PA, with her principal place of business 980 Tyrone Blvd., St. Petersburg, Florida 33743.

91. CHARLES R. WILSON  US Attorney, Park Tower, Suite 3200, 400 North Tampa Street, Tampa, Florida 33602-4708.

92. PATRICIA WILLINS  Assistant US Attorney, Park Tower, Suite 3200, 400 North Tampa Street, Tampa, Florida 33602-4708.

93. STEPHEN G. WATTS PA. A law firm organized and existing under the laws of the State of Florida. It maintains and transacts business in the middle district of Florida. Its principal office is 809 Druid Road East, Clearwater, Florida 33756.

94. STEPHEN G. WATTS is a citizen and resident of the State of Florida. He is an attorney with the law firm Stephen G. Watts, P.A. His principal place of business is 809 Druid Road East, Clearwater, Florida 33756.

95. HOMESIDE LENDING, INC./WASHINGTON MUTUAL (Homeside is owned by Washington Mutual, Inc.)a mortgage lending company, existing under the laws of the State of Florida. It maintains offices and transacts business in the Middle District of Florida. Their principal office is 1201 3rd Avenue, Seattle, WA 98101.

96. <u>FEDERAL HOME LOAN MORTGAGE CORP. (FREDDIE MAC)</u> is a

government-sponsored company a buyer and guarantor of home mortgages. It

exists under the laws of the State of Florida. Their principal office is 8200

Jones Branch Drive., McLean, VA 22102-3110. They purchased the

mortgage in Homeside Lending vs. Peter Stack from Homeside Lending

Inc./Washington Mutual.

97. <u>AMERICAN EXPRESS</u> a company organized and existing under the laws of

the State of Florida and doing business in the State of Florida with a principal

office: American Express Travel Related Services Company, Inc., c/o CT

Corporation System, R.A., 1200 S. Pine Island Rd., Plantation, Florida 33324.

98. <u>FLORIDA BAR ASSOCIATION</u> is an association organized and existing

under the laws of the State of Florida and maintains offices and transacts

business in the Middle District of Florida with its principal office at 650

Applachin Parkway, Tallahassee, Florida 32399-2300. Branch Office- Suite

C-49, Tampa Airport Marriott Hotel, Tampa, Florida 33324.

<div align="center">

CLAIMS FOR RELIEF

1ST CAUSE OF ACTION

RICO: FALSE BILLING SCHEME

</div>

99. <u>Defendants</u>: Shapiro & Fishman, Mason & Associates, The Florida Bar

Association, Homeside Lending, Washington Mutual, McSurdy & Stern,

Nellie Khouzam and Freddie Mac.

100.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 thru 98.

<u>Persons/Defendants</u>:

<div align="center">16</div>

101.   Shapiro & Fishman, Mason & Associates, The Florida Bar Association, Homeside Lending, Washington Mutual, Freddie Mac, McSurdy & Stern, Nellie Khouzam are persons within the meaning of 18 U.S.C.A. §1961 (3) and 1962 (a) and (c).

## ENTERPRISES

102.   At all relevant times the Florida Bar Association (Enterprise 1) was an association constituting an enterprise under 18 U.S.C.A. §1961 (4).

103.   At all relevant times Enterprise 1 was engaged in, or its activities affected interstate commerce within the meaning of 18 U.S.C.A. §1962 (a) and (c).

104.   At all relevant times, Homeside Lending (Enterprise 2) was a corporation constituting an enterprise under 18 U.S.C.A. §1961 (4).

105.   At all relevant times, Enterprise 2 was engaged in, or its activities affected interstate commerce within the meaning of 18 U.S.C.A. §1962 (a) and (c).

## PATTERN OF RACKETEERING ACTIVITY

106.   Beginning in 1998 and continuing to the present and at all relevant times (a) Defendants Shapiro & Fishman, Mason & Associates, multiple members of the Florida Bar et al.(b) engaged in a series of related, yet distinct predicate acts (c) extending over a substantial period of time and threatening to continue (d) involving the plaintiffs (e) in furtherance of a number of different but related schemes (f) causing the occurrence of distinct injuries to plaintiffs.

107.   The principal scheme to include incorrect defendants in a mortgage foreclosure case, never correct the mistake, and continue to bill for service to false defendants in order to increase attorney fees.

108.   The fees would be paid by Homeside Lending without challenge, the court would rubber stamp them as correct and if challenged by the mortgagee, the attorneys and judges all members of the Florida Bar, by a conspiracy of silence would ignore it.

109.   Repeated patterns of racketeering activities occurred using U.S. Mail to complete the fraud.  By using the U.S. Mail, the defendants demanded additional fees on multiple occasions.

110.   The judges by signing orders sent to the plaintiffs by U.S. Mail allowed the fraudulent fees.

111.   Enterprise 2 (Homeside Lending) were made aware of the fraudulent billing by the plaintiffs but continued to pay all attorney fees without challenge which ultimately will be paid by the mortgagee.  With knowledge they facilitated this pattern of racketeering and used the U.S. Mail to do so.

112.   Despite repeated notification of a disputed debt (re: fraudulent attorney fees), Shapiro & Fishman, Mason & Associates, McSurdy & Stern and Homeside Lending never provided the plaintiff with a verification of debt and explanation of attorney billing fees for service to defendants who should not be in the case.

113.   This was a persistent pattern of non-compliance which was intentional in violation of 15 U.S.C.A. Section 1692g (b) (validation of debts).

114.   This was part of a pattern of fraudulent concealment.

115.   By not responding and ignoring all billing questions, they attempted to conceal and suppress their fraudulent actions.

116. Initially the fraudulent billing was not known and inaccessible to the plaintiffs.

117. The defendants intentionally concealed the truth in order to defraud the plaintiffs resulting in sustained damages to the plaintiffs who would have acted differently if they knew from the onset.

118. This false billing scheme could not be successful unless the defendants knew and counted on the fact that the court would look the other way and continue their conspiracy of silence and take no action to hold them accountable.

119. In this case, the court would help by manipulating the court record and using their expertise and knowledge of the rules of the court against the plaintiffs.

120. On July 30, 2004, a 3rd Amended Final Judgment was filed in Homeside vs. Peter Stack.

121. Within 10 days a <u>Motion for Rehearing</u> was filed August 6, 2004. It included newly discovered evidence that repeated fraudulent billing using the U.S. Mail was included in the 3rd Amended Final Judgment.

122. This had been reviewed in detail on July 26, 2004 in the Motion for Sanctions which was ignored and never decided by the court (Judge Khouzam).

123. Included in the rehearing motion, the repeated fraud, racketeering, and the courts failure to address this, was essentially hiding the issue. "A body exists, you can't make it disappear every act and every concealment for cover-up is

19

criminal as it is done and is being done by well versed, equally educated and equally tested individuals acting in consort to protect themselves individually and as a whole."

124.    With absolutely no action occurring on the Motion for Rehearing, a Motion to Disqualify Judge Khouzam was filed August 19, 2004.

125.    According to the Rules of Judicial Procedure, this should have been decided immediately and was not.

126.    On August 30, 2004 the time for appealing the 3rd Amended Judgment would normally expire but since there was an undecided rehearing motion, procedurally this did not occur.

127.    The court (Judge Khouzam) and Mason & Associates waited, hoping the plaintiffs would file an appeal that would have made the despicable acts contained in the rehearing motion and motion for sanctions disappear. This means they couldn't be used in an appeal.

128.    The foreclosure sale was set for September 3, 2004 with the Stay of the Sale being filed August 30, 2004.

129.    The court denied the Motion for Stay, Rehearing and Disqualification on August 31, 2004, but did not mail until September 1, 2004. Therefore the earliest they would be received would be one (1) day before the sale leaving less then twenty-four (24) hours to file any further actions with the court, intentionally limiting and denying due process to the plaintiffs:

(1) By not following the Rules of Civil Procedure, the court (Khouzam) ramrodded the sale of property.

(2)  The court tried to manipulate the record in this case in order to bury illegal actions.

130.   September 3, 2004 the house was sold in a foreclosure sale in spite of the fact Bankruptcy was filed the day before the sale September 2, 2004, with the court and counsel (Mason & Associates) being notified.

131.   With the sale of the house, the fraud was complete.

132.   By not acknowledging the claims in the plaintiffs motions, the court has disregarded fraud, malfeasance and racketeering and is covering them up.

133.   They are not alone.

134.   An appeal to the 2nd District Court of Appeals was filed after the above, again challenging the judgment because of fraud.

135.   The appeal was denied with a per curium affirmed decision without opinion which means the plaintiffs can go no further in the Florida courts. With this decision the Supreme Court of Florida cannot review the decision since there was no written opinion.

136.   The cover-up is complete.

137.   Not one attorney, judge or court through multiple motions from the beginning of the case would respond or acknowledge the basic question of fraud in the foreclosure judgment.

138.   This is continued in other courts. Mason & Associates filed a proof of claim in the US Bankruptcy Court May 28, 2002. A fraudulent judgment for SEVENTY-TWO THOUSAND 0NE HUNDRED EIGHTEEN DOLLARS and FOURTY-SEVEN/100 ($72,118.47) was entered in the 6th Judicial

21

Circuit Court. The proof of claim in the US Bankruptcy Court was NINETY
THOUSAND FORTY-EIGHT DOLLARS and SEVENTY-FOUR/100
($90,048.74), a SEVENTEEN THOUSAND NINE HUNDRED THIRTY
DOLLARS and TWENTY-SEVEN/100 ($17,930.27) difference in fifty-three
(53) days without explanation.

139.    In 2004, Mason & Associates put in Bankruptcy Court a motion for relief
from an automatic stay and attended a hearing with Judge Glenn and Sandra
Mann being present, 02/10/05.

140.    The attorney for Homeside Lending stated to the court that no payment
had been made to Homeside Lending since 1998. Sandra Mann informed the
court that this was a lie, when in fact a payment in full for the Amended Final
Judgment was made September, 2001, and Homeside Lending/Mason &
Associates refused to issue a satisfaction of judgment.

141.    This false statement to the Bankruptcy Court was ignored with absolutely
no accountability demanded from Mason & Associates.

142.    Prior to the hearing, Judge Glenn had received a copy of the appeal to the
2nd District Court of Appeals which outlined the multiple frauds in the case.

<u>BANK FRAUD 18 U.S.C.A. 1344</u>

<u>THEFT AND EMBEZZLEMENT 18 U.S.C.A. 657</u>

143.    This false billing scheme could not have succeeded without the
cooperation of an officer/employee of Homeside Lending agreeing to use
Homeside Lending funds to pay known fraudulent attorney fees willfully
misapplying money belonging to Homeside Lending.

22

144.    Shapiro & Fishman and Mason & Associates knowingly executed a

scheme to obtain money under the custody or control of Homeside Lending by

means of fraudulent representation.


## MAIL FRAUD 18 U.S.C.A. §1341

145.    In furtherance of their fraudulent scheme and at their discretion and/or

control the defendants Shapiro & Fishman, Mason & Associates, judges,

multiple members of the Florida Bar, Homeside Lending et al., caused to be

sent thru the U.S. Mail, motions and court orders for fraudulent attorney fees.

## PROHIBITED ACTS

## 18 U.S.C.A.§1962 (c)

146.    Shapiro & Fishman, Mason & Associates, et al. were all members of the

Florida Bar (Enterprise 1).  The defendants conducted and/or participated in

the affairs of Enterprise 1 and through the pattern of racketeering activity

described in paragraph 99 thru 145 in violation of 18 U.S.C.A. §1962 (c) and

18 U.S.C.A. §1341 (mail fraud).  The defendants each committed, participated

in or aided and abetted the commission of two or more racketeering acts

described in paragraphs 99 thru 145.

## 18 U.S.C.A. 1962 (a)

147.    The Florida Bar Association indirectly benefited from the racketeering

activity described in paragraph 99 thru 145 and as described in paragraph 19

Scheme A.

148.   The Florida Bar benefited from the racketeering activity described, by the resulting suppression of exposure to the public of how bad things really are with multiple attorneys, including judges (all members of the Florida Bar) who ignore documented fraud in the plaintiffs cases without comment, investigation, or answers to the plaintiffs, in order to maintain their perception by the public that they are unimpeachable and protecting the public and the administration of justice.

149.   This is essential in order to retain self-regulating status that would be in jeopardy if the public were to ask questions and because of this benefit to Enterprise 1, it enabled the defendants to perpetrate their frauds.

## EFFECTS ON PLAINTIFFS:

## INJURY TO BUSINESS OR PROPERTY

150.   By reason of the conduct of defendants described in paragraphs 99 thru 149 above, the plaintiffs have been injured in their business or property including but not limited to a lost asset, which resulted in an inability to pay an IRS debt, a premature withdrawal from a Keogh Plan with subsequent lost investment and a closing of a medical practice because of a lack of assets to sustain the practice.

## DAMAGES

151.   Wherefore, plaintiffs request that this court:

152.   (A) Order defendants to pay plaintiffs three (3) times the money that (1) would have been obtained from securing a mortgage on the home if a title had

been issued 9/01. (2) Amount withdrawn from a Keogh Plan prematurely in order to satisfy the Amended Final Judgment on the mortgage foreclosure, plus interest and the cost of IRS penalties.

153. (B) Award plaintiffs costs involved in this lawsuit including attorney's fees.

154. (C). Order such other relief as this court deems just.

## 2ND CAUSE OF ACTION


## 2ND CAUSE OF ACTION

### RICO

### EXTORTION SCHEME

155. Defendants: Mason & Associates, Homeside Lending/ Washington Mutual (Enterprise 2), McSurdy & Stern, Nellie Khouzam.

156. Plaintiffs repeat and re-allege the allegations in paragraphs 1 thru 154.

157. Persons/Defendants: Mason & Associates, Homeside Lending/Washington Mutual (Enterprise 2), McSurdy & Stern, Nellie Khouzam, are persons within meaning of 18 U.S.C.A. §1961 (3) and 1962 (a) and (c).

158. Enterprise: At all relevant times the Florida Bar Association (Enterprise 1) was an association constituting an enterprise under 18 U.S.C.A. §1961 (4).

159. At all times Enterprise 1 was engaged or its activities affected interstate commerce within the meaning of 18 U.S.C.A. 1962 (a) and (c).

160. Homeside Lending/Washington Mutual (Enterprise 2) at all relevant times was a corporation constituting an enterprise under 18 U.S.C.A. 1961 (4).

161.    At all times Enterprise 2 was engaged or its activities affected interstate
commerce within the meaning of 18 U.S.C.A.1962 (a) and (c).

## PATTERN OF RACKETEERING

162.    Beginning in 1998 and continuing to the present and at all relevant times
(a) Defendants Mason & Associates, multiple members of the Florida Bar et
al. (b) engaged in a series of related, yet distinct predicated acts (c) extending
over a substantial period of time and threatening to continue (d) involving
plaintiff (e) in furtherance of a number of different but relevant schemes (f)
causing the occurrence of distinct injuries to plaintiffs.

163.    The Amended Final Judgment in Homeside Lending vs. Peter Stack was
paid in full by the plaintiff September, 2001.

164.    Mason & Associates in spite of accepting and receiving checks for the full
judgment amount did not cash them and refused to give a Satisfaction of
Judgment to the plaintiffs.

165.    Using the U.S. Mail, they demanded more fees, which were inaccurate and
fraudulent, knowing they had past the time limitation to demand additional
fees.

166.    The title to the house would not be released until additional fraudulent
attorney fees were paid.  Using the U.S. Mail they demanded the fees.  If the
fees were not paid, plaintiffs would lose their home.

167.    In this extortive scheme, they knew the equity in the house could cover
these fraudulent fees and with a combination of resources and wealth they

overwhelm the mortgagee who has limited resources and will not be likely to

challenge them and knowing the court with fellow members of the Florida Bar

will rubber stamp them all as being correct.

168.   They also know that their fellow members of the Florida Bar will remain

silent to fee challenges and take no legal action against them, again actively

facilitating and implementing an ongoing fraud by illegally taking no action.

### MAIL FRAUD 18 U.S.C.A. §1341

169.   In furtherance of their fraudulent scheme and at their discretion and/or

control, the defendants, Mason & Associates et al. caused to be sent through

the US Mail motions and court orders for the plaintiffs.

### PROHIBITED ACTS:  18 U.S.C.A.§1962 (c)

170.   Shapiro & Fishman, Mason & Associates et al. were all members of the

Florida Bar (Enterprise 1).  The defendants conducted and/or participated in

the affairs of Enterprise 1 and through the pattern of racketeering activity

described in paragraph 155 thru 169 in violation of 18 U.S.C.A. §1962 (c) and

18 U.S.C.A. §1341 (mail fraud).  The defendants each committed, participated

in or aided and abetted the commission of two or more racketeering acts

described in Paragraphs 155 thru 169.

27

18 U.S.C.A. 1962 (a)

171.    The Florida Bar Association indirectly benefited from the racketeering

activity described in paragraph 155 thru 169 and as described in paragraph 8

thru 34 Scheme A, B, C.

172.    .The Florida Bar benefited from the racketeering activity described, by the

resulting suppression of exposure to the public of how bad things really are

with multiple attorneys, including judges (all members of the Florida Bar)

who ignore documented fraud in the plaintiffs cases without comment,

investigation, or answers to the plaintiffs, in order to maintain their perception

by the public that they are unimpeachable and they are protecting the public

and the administration of justice.

173.    This is essential in order to retain self-regulating status that would be in

jeopardy if the public were to ask questions and because of this benefit to

Enterprise 1, it enabled the defendants to perpetrate their frauds.

EFFECTS ON PLAINTIFFS

INJURY TO BUSINESS OR PROPERTY

174.    By reason of the conduct of defendants described in paragraphs 155 thru

173 above, the plaintiffs have been injured in their business or property

including but not limited to a lost asset, which resulted in an inability to pay

an IRS debt, a premature withdrawal from a Keogh Plan with subsequent lost

investment and a closing of a medical practice because of a lack of assets to

sustain the practice.

## DAMAGES

175.   Wherefore, plaintiffs request that this court:

176.   (D)  Order defendants to pay plaintiffs three (3) times the money that (1) would have been obtained from securing a mortgage on the home if a title had been issued 9/01. (2) amount withdrawn from a Keogh Plan prematurely in order to satisfy the Amended Final Judgment on the mortgage foreclosure, plus interest and the cost of IRS penalties.

177.   (E)  Award plaintiffs costs involved in this lawsuit including attorney's fees.

178.   (F)  Order such other relief as this court deems just.

## 3RD CAUSE OF ACTION

## RICO

## FRAUD AND PROTECTING ATTORNEYS AGAINST CRIMINAL ACTION.

179.   Defendants:  Stephen Watts, Bruce Boyer, Nellie Khouzan, Mason & Associates, appellant judges Vallanti, C.J. Atenbernd, J. Salcines, , Florida Bar Association, Shapiro & Fishman, Alan Parrish, Charles R. Wilson US Attorney, Patricial Willins Assistant US Attorney, Battaglia, Ross, Dicus & Wein P.A., Kelli H. Crabb.

180.   Plaintiffs repeat and re-allege the allegation described in paragraphs 1 thru 178.

29

181. <u>PERSONS/DEFENDANTS</u> Stephen Watts, Bruce Boyer, Nellie Khouzan, Mason & Associates, appellant judges Vallanti, C.J. Atenbernd, J. Salcines, , Florida Bar Association, Shapiro & Fishman,  Alan Parrish, Charles R. Wilson US Attorney, Patricial Willins Assistant US Attorney, Battaglia, Ross, Dicus & Wein P.A., Kelli H. Crabb are persons within the meaning of 18 U.S.C.A. 1961 (3) and 1962 (a) and (c).

182. <u>ENTERPRISE</u> At all relevant times the Florida Bar Association (Enterprise 1) was an association constituting an enterprise under 18 U.S.C.A. §1961 (4).

183. At all relevant times Enterprise 1 was engaged or its activities affected interstate commerce within the meaning of 18 U.S.C.A. 1962 (a) and(c).

<div align="center">

### PATTERN OF RACKETEERING

</div>

184. Beginning in 1998 and continuing to the present and at all relevant times (a) Defendants Stephen Watts, Mason & Associates, Allan Parrish et al (b) engaged in a series of related, yet distinct predicated acts (c) extending over a substantial period of time and threatening to continue (d) involving plaintiff (e) in furtherance of a number of different but relevant schemes (f) causing the occurrence of distinct injuries to plaintiffs.

185. Stephen Watts lied to his clients (the plaintiffs) and the court about depositing the money given to him by the plaintiffs to pay the Amended Final Judgment (for the mortgage foreclosure case Homeside Lending vs. Peter

Stack) into the court registry. He put a fraudulent motion into the court stating the above.

186.    He also told Mason & Associates that he had deposited money into the court registry. He stated that the court clerk required additional funds even though no deposit had occurred.

187.    Watts kept control of the money given him by the plaintiff from September of 2001 to March of 2002 despite withdrawing from the case in January of 2002.

188.    Watts used the money for his own purposes and thus denying access to the funds by the plaintiffs who thought they were deposited in the court registry.

189.    Watts used the U.S. Mails to plaintiffs and Mason & Associates to accomplish the above. When the plaintiffs became aware that the money was not deposited in the court registry as stated by Watts, the court including judges and attorneys, all members of the Florida Bar, were informed.

190.    Watts knew and counted on their conspiracy of silence and has never been held accountable.

191.    The defendants knew Watts's actions were fraudulent, but illegally did not follow the law or the Florida Bar's Code of Ethics they are bound to uphold.

192.    The U.S. Mail was used by Watts, with letters to plaintiffs, motions with service to plaintiffs and Mason & Associates. The judges signed orders sent to the plaintiffs by U.S. Mail ignoring Watts's fraudulent activities.

193.   Dishonesty, fraud, misrepresentation to the court, has been present since the initial proceeding in Homeside Lending vs. Peter Stack.

194.   In the Final Summary Judgment filed March 18, 1999, multiple attorneys mislead the court. When presented with the opportunity to correct fraudulent statements, they failed to do so.

195.   The filing attorney, Parrish of Shapiro & Fishman, knowingly submits an IRS Lien completely misrepresenting the facts contained in it to the court...not the right people, addresses or social security numbers. He did not verify any of the facts which were obviously incorrect and went foreword anyway.

196.   The US Attorney and Assistant US Attorney were negligent in not determining if the statements and documents were true, but went ahead and submitted an Answer of Defendant United States of America on behalf of the IRS using the wrong people and stating that it has and claims a lien against the property when it did not.

197.   Parrish and Shapiro & Fishman were informed of the false statements in their documents but did nothing.

32

198.   Parrish also included Battagalia, Ross, Dicus & Wein, P.A. (BRDW) in its complaint. Kelli H. Crabb on behalf of BRDW in its Answer to plaintiffs complaint, clearly, intentionally and fraudulently states it has an interest and claims entitlement, which it did not have.

199.   Parrish and Shapiro & Fishman were informed of the false statements BRDW had made to the court and did nothing to correct them.

200.   Irrefutable evidence was submitted to Parrish, Shapiro & Fishman and Battaglia, Ross Dicus & Wein, PA (BRDW) (who had been representing Arthur Anderson) that their bill had been paid in full with a hand delivered bank check, a written receipt of acceptance of check, a copy of the bank check paying the bill in full.

201.   Upon receiving the above information, Kelli Crabb sent a letter by U.S. Mail to the plaintiffs saying she could do nothing even though she had submitted clearly fraudulent statements to the court in her answer with service to the plaintiffs by mail.

202.   Both false Answers of Defendants submitted to the court at the onset of case still stand uncorrected.

203.    Clear fraud is apparent. Despite this, through multiple pleadings to the 6th Judicial Circuit Court and the 2nd District Court of Appeal, all attorneys and judges involved refused to correct any of the errors, even though they caused harm to the plaintiffs.

204.    The defendants know they are insulated and protected in their actions.

## MAIL FRAUD 18 U.S.C.A. §1341

205.    In furtherance of their fraudulent schemes and at their direction and/or control Watts, multiple attorneys and judges caused to be sent through the U.S. Mail, motions and court orders that allowed frauds to succeed.

## PROHIBITED ACTS 18 U.S.C.A. §1962 (c)

206 (a).    Stephen Watts, Bruce Boyer, Nellie Khouzam, Mason & Associates, (Appellant Judges:  A.C.J. Campbell, Altenbernd C.J., J.J. Salcines, ACJ Parker, Northcoft, Casavera, Alan Parrish, Charles Wilson, Patricia Willins, Battaglia, Ross, Dicus & Wein PA, Kelli H. Crabb) were all members of the Florida Bar (Enterprise 1). The defendants conducted and/or participated in the affairs of Enterprise 1 and through the pattern of racketeering activity described in paragraph 179-205 in violation of 18 U.S.C.A. 1962 (c) and 18 U.S.C.A. 1341 (mail fraud) The defendants each committed, participated in or aided and abetted the commission of two or more racketeering acts described in paragraphs 179  thru 205.

## 18 U.S.C.A. 1962 (a)

206.    (b) The Florida Bar indirectly benefited from the racketeering activity
described in paragraph 179 thru 205 and as described in paragraphs 8 thru 19
Scheme A, and paragraphs 35 thru 44 Scheme D.

207.    The Florida Bar benefited from the racketeering activity described, by the
resulting suppression of exposure to the public of how bad things really are
with multiple attorneys, including judges (all members of the Florida Bar)
who ignore documented fraud in the plaintiffs cases without comment,
investigation, or answers to the plaintiffs, in order to maintain their perception
by the public that they are unimpeachable and they are protecting the public
and the administration of justice.

208.    This is essential in order to retain their self-regulating status which would
be in jeopardy if the public were to ask questions and because of this benefit
to Enterprise 1, it enabled the defendants to perpetrate their frauds.

## EFFECTS ON PLAINTIFFS

### INJURY TO BUSINESS OR PROPERTY

209.    By reason of the conduct of attorney Stephen Watts and others described
in paragraphs 179 thru 208 above, the plaintiffs have been injured in their
business or property including but not limited to a lost asset, which resulted in
an inability to pay an IRS debt, a premature withdrawal from a Keogh Plan
with subsequent lost investment and a closing of a medical practice because of
a lack of assets to sustain an practice.

## DAMAGES

210.    Wherefore, plaintiffs request that this court:

211.    (A)  Order Watts, Shapiro & Fishman, Alan Parrish, Battagalia, Ross, Dicus PA, Kelli Crabb, et al  to pay plaintiffs three (3) times the money that (1) would have been obtained from securing a mortgage on the home if a title had been issued 9/01. (2) amount withdrawn from a Keogh Plan prematurely in order to satisfy the Amended Final Judgment on the mortgage foreclosure, plus interest and the cost of IRS penalties.

212.    (B)  Award plaintiffs costs involved in this lawsuit including attorney's fees.

213.    (C)  Order such other relief as this court deems just.

## 4TH CAUSE OF ACTION

214.    Sherman Antitrust 15 U.S.C.A. §1-2

215.    Mortgage foreclosure, price fixing, conspiracy and combination to fix prices for attorney fees at mortgage foreclosure.

## I

216.    Complaint is filed and this action is instituted under section 15 U.S.C.A. §1-2 (Sherman Antitrust Act 1), 15 U.S.C.A. §15 and 26 (Clayton Act).

217.    Purpose of this action is to recover damages against defendants for injury to the plaintiffs as mortgagees, resulting from defendants violation of the

antitrust laws of the United States and to restrain and enjoin defendants from continuing the use of their monopoly with combinations, conspiracies, and contracts in restrain of trade and commerce to the injury of the plaintiffs.

218.     The defendants maintain offices, transact business and are each found within the Middle District of Florida.

## II

219.  Plaintiffs:  Peter G. Stack resides in Pinellas County, Florida.
Sandra Mann-Stack resides in Palm Harbor, Florida.

## III

219.     (a)  Defendants:  Florida Bar Association, Shapiro & Fishman, Mason & Associates, McSurdy & Stern, Nellie Khouzam, Bruce Boyer, (Appellant Judges: A.C.J. Campbell, Altenbernd C.J., J.J. Salcines, ACJ Parker, Northcoft, Casavera)

## IV

220.     Co-Conspirators:  Members of the Florida Bar.

221.      The Florida State Bar is an association organized and existing under the laws of the State of Florida and maintaining offices and transacts business in the Middle District of Florida.

222.     All persons who practice law in the State of Florida are required to become members of the State Bar.

223.   One of the functions of the State Bar is to insure that all members act in accordance with the standards of professional conduct as codified in the cannons of ethics promulgated by the American Bar Association.  The State Bar has established a Committee on Ethics and Grievances (hereinafter referred to as the committee).  One function of the committee is to receive complaints against those association members alleged to have violated the canon of ethics and to conduct investigations and hold hearings to determine whether formal sanctions against the named party would be appropriate. Formal sanctions include reprimand, suspension and disbarment from the practice of law in the State of Florida.

224.   MASON & ASSOCIATES

225.   MCSURDY & STERN

226.   SHAPIRO & FISHMAN

227.   JUDGES:  Nellie Khouzam, Bruce Boyer, A.C.J. Campbell, Altenbernd C.J., J.J. Salcines, ACJ Parker, Northcoft, Casavera.

## V

### NATURE OF TRADE AND COMMERCE

228.   The activities of the Florida Bar and its members as described herein are within the flow of interstate commerce and have an effect upon that commerce.

229.   Members of the association perform all legal services incident to mortgage foreclosure action in the Middle District of Florida.

230.    There are hundreds of mortgage foreclosure actions in the Middle District
of Florida each year.

231.    Because of the transient nature of a significant portion of the population of
Pinellas County of which the Middle District of Florida forms a part, a
substantial number of persons using the services of members of the Fla. Bar
in connection with mortgage foreclosures are persons who have moved into
the District from places outside the State of Florida and persons moving from
the Middle District of Florida to places outside the State of Florida and
persons who have second homes in Florida but reside outside the State of
Florida.

232.    Because the State of Florida requires that all of the aforementioned legal
services be performed only by attorneys licensed to practice law within the
state, persons who have moved to and from places outside the state, or reside
outside the state, must use the services of the members of the Florida Bar.
The policies, acts, and practices of the Florida Bar and its members thereby
attest the aforesaid interstate movement of persons.

233.    Mortgages can be obtained from sources outside the State of Florida and
moved in interstate commerce into the State of Florida utilizing the service
and through the activities of members of the Florida Bar.

234.    As an additional part of their services, attorneys assist their clients in
preparation of documents incident to mortgage foreclosures.

## VI

### OFFENSE

235.    For many years, up to and including the date of filing of this complaint, the defendants and co-conspirators have used their monopoly in mortgage foreclosure cases, to continually engage in an unlawful combination and conspiracy to restrain the aforesaid interstate trade and commerce by fixing attorney fees in mortgage foreclosure cases in the State of Florida in violation of Section 1 and 2 of the Sherman Act.. Said unlawful combination and conspiracy is continuing and will continue unless the relief hereinafter prayed for is granted.

236.    The aforesaid combination and conspiracy have consisted of a continuing agreement and concert of action between the defendants and co-conspirators to increase and generate attorney fees by padding the attorney billings with inaccurate, inappropriate and fraudulent fees for legal services by members of the Florida Bar.

237.    In effectuating the aforesaid combination and conspiracy the defendants and co-conspirators have done things which as herein before alleged, they conspired to do including among other things, the following:

238.    a. Use mortgage foreclosure cases to generate attorney fees, pad the bills with inaccurate, inappropriate and fraudulent billing.

239.    b. The court's judges, all members of the Florida Bar, looked the other way and rubber stamped all attorney fees as correct, by refusing to review or to acknowledge that they were being challenged.

40

240.   c. Defendants and co-conspirators participate in a conspiracy of silence to conceal fraudulent fees.

241.   d. Unlawful combination of conspiracy to price fix arbitrary and fraudulent legal fees since the defendants make sure they remain unchallenged.

242.   e. The defendants further their monopoly power by a combination of wealth and resources used against a defendant in a mortgage foreclosure case who cannot fight because of lack of funds. This is counted on by the defendants who know they will go unchallenged.

243.   f. A monopoly on fees is further strengthened by a conspiracy of silence by other attorneys in the case and by the judges involved.


## VII

### EFFECTS ON PLAINTIFFS

244.   The aforesaid combination and conspiracy has had the following effects among others on the individual plaintiffs.

245.   a. Because of the existence of a monopoly the fees charged for legal services incident to a mortgage foreclosure by the Homeside Lending attorneys, which must be paid by the plaintiffs have been raised, fixed maintained at an artificial and unchallengeable level (non-competitive).

246.   b. As a direct result of the acts of defendants and co-conspirators described herein, plaintiffs are compelled to pay a substantially higher price to redeem a mortgage in foreclosure than would be but for the violations.

247.   c. As a direct result of the acts of defendants and co-conspirators described herein, plaintiffs have suffered and continue to suffer injury to business and property.

## VIII

## DAMAGES

248.   As a consequence of the unlawful acts of defendants as aforesaid, the individual plaintiffs have been injured in their business and property in the approximate amount of THREE HUNDRED SIXTY-FIVE THOUSAND DOLLARS AND 00/100 ($365,000.00) as of the date of filing this complaint.

249.   Plaintiffs continue to incur injury to their business and property for as long as defendants persist in their unlawful conduct.

250.   Wherefore Plaintiffs Pray:

251.   (1) That the court adjudge and decree that the defendants and co-conspirators have engaged in an unlawful combination and conspiracy in restrain of the aforesaid trade and commerce in the sale of legal services in the State of Florida and engaged in monopolizing actions in violation of section 1 and 2 of the Sherman Act.

252.   (2) That the defendants and all other persons acting or claiming to act on their behalf and each of their members be enjoined and restrained from in any manner, directly or indirectly continuing, maintaining, or renewing the combination and conspiracy herein before alleged or from engaging in any other combination, conspiracy, contract, agreement, understanding or concert

of action having a similar purpose or effect and from adopting or following

any practice, plan, program or device having similar purpose or effect.

253.    (3) That the defendants and all other persons acting or claiming to act on

their behalf and each of their members be enjoined and restrained from

agreeing to remain silent on questionable legal fees and enjoined and refrained

from agreeing to not report illegal acts by their fellow attorneys and members

of the Florida Bar.

254.    (4) That judgment be entered in favor to (treble) the amount of the

damages suffered by said plaintiffs by reason of violations of the law herein

complained of, together with costs of this suit and reasonable attorney fees

255.    (5) That plaintiffs have such further relief as the court may deem to be just

and proper.


## 5TH CAUSE OF ACTION

## COMMON-LAW FRAUD


256.    Defendants, Mason & Associates, Shapiro & Fishman, Homeside

Lending, Washington Mutual, Judges Harlan, Boyer, Khouzam.

257.    Plaintiffs repeat and re-allege the allegations in paragraph 1 thru 255.

For each attorney bill thru 1998 to the present, Shapiro & Fishman and Mason &

Associates have been paid in full by Homeside Lending.

258.    Each of the bills presented for service by the defendants were false. They included service to defendants in the case who they knew should not be included in the case.

259.    As a result, the plaintiff has suffered losses and will continue to suffer losses because these fraudulent bills for attorney fees are part of the judgment which has to be redeemed by the plaintiff in order to end a mortgage foreclosure.

260.    Wherefore, plaintiffs request that the court:

261.    (A)  Declare, Shapiro & Fishman, Mason & Associates, Homeside Lending/Washington Mutual and the judges et al. involved in the case defrauded the plaintiffs by demanding attorney fees for compensation for service to defendants they know should not be included in the case.

262.    (B)  Shapiro & Fishman, Mason & Associates et al. are liable for the loss of obtaining the title of the plaintiffs home even when the judgment was paid in a mortgage foreclosure case.

263.    (C).  Award plaintiff costs and attorneys fees.

264.    (D)  Award plaintiff punitive damages.

265.    (E)  Order such other relief as the court deems just and proper.

## 6TH CAUSE OF ACTION

### COMMON-LAW FRAUD

266.    <u>Defendants:</u> Stephen Watts

267.    Plaintiffs repeat and re-allege the allegations in paragraphs 184 thru 192.

268.    Wherefore plaintiffs request that the court:

269.    (A). Declare Stephen Watts defrauded the plaintiffs and the court by filing

false notice of payment to the clerk, a false motion to compel satisfaction

including the fact he had deposited funds to satisfy the Amended Final

Judgment in the court registry when he had not, and sending to the plaintiff a

copy of a check that he said was put into the court registry December 12,

2001.

270.    (B). Stephen Watts is liable for denying the plaintiffs access to their funds

which they thought were in the court registry in order to use them for his own

purposes.

271.    (C) Award plaintiffs costs and attorney fees.

272.    (D) Award plaintiffs punitive damages.

273.    (E) Order such relief as this court deem just and proper.


## 7TH CAUSE OF ACTION

### FRAUD, BREACH OF FIDICIARY RESPONSIBILITY

274.    Defendant: Homeside Lending/ Washington Mutual.

275.    Plaintiffs repeat and re-allege the allegations in paragraph 1 thru 273.

276.    Homeside Lending has a fiduciary responsibility to monitor attorney fees

for the plaintiffs.

277.    Homeside Lending paid attorney fees without question, even when

informed by the plaintiffs that they were incorrect.

278.    This was to the expense and detriment of the plaintiffs.

45

Because they failed to deal fairly and honestly with the plaintiffs, they

participated and facilitated the fraud perpetrated on the plaintiffs.

279.    At any time, Homeside Lending could have ended the dispute by

addressing plaintiffs questions.  They never did so, breaching their fiduciary

duty and causing preventable damage to the plaintiffs.

280.    Wherefore plaintiffs request that this court:

281.    (A)  Declare Homeside Lending breached their fiduciary responsibility to

the plaintiffs by not monitoring attorney fees.

282.    (B)  Homeside Lending is liable plus interest for the loss of obtaining the

title of plaintiffs home.

283.    (C)  Award plaintiffs cost and attorney fees.

284.    (D)  Award plaintiffs punitive damages.

285.    (E)  Order such other relief as the court deems just and proper.


## 8TH CAUSE OF ACTION

## RICO

## THEFT OF GOLD AND SILVER COINS WITH MANIPULATION OF THE COURT

## RECORD IN FURTHERANCE OF THE FRAUD AND CONCEALMENT.

286.    Defendants:  American Express, Renee Jordon, Brandt C. Downey III,

Lindsey Schatzman, W. Douglas Baird, Florida Bar Association, Bacen &

Kaplan P.A.

287.    Plaintiffs request and re-allege the allegations set forth in paragraphs 1

thru 285.

288.   Persons/Defendants American Express, Renee Jordon, Brandt C. Downey III, Lindsey Schatzman, W. Douglas Baird, Florida Bar Association are persons within the means of 18 U.S.C.A. §1961 (3) and 1962 (a) and (c).

Enterprises

289.   At all relevant times the Florida Bar Association (Enterprise 1) was an association constituting an enterprise under 18 U.S.C.A. § 1961 (4).

290.   At all relevant times Enterprise 1 was engaged in or its activities affected interstate commerce within the meanings of 18 U.S.C.A. 1962 (a) and (c).

291.   At all relevant times American Express (Enterprise 3) was a corporation constituting an enterprise under 18 U.S.C.A. §1961 (4).

292.   At all relevant times Enterprise 3 was engaged in, or its activities affected interstate commerce within the meaning of 18 U.S.C.A. §1962 (a) and (c).

## PATTERN OF RACKETEERING ACTIVITY

293.   Beginning in 1996 and continuing to present and at all relevant times (a) Defendants, American Express et al (b) engaged in a series of related, yet distinct acts (c) extending over a substantial period of time and threatening to continue (d) involving plaintiff (e) in furtherance of a number of different but related schemes (f) causing the occurrence of distinct injuries to plaintiffs.

294.   In case of American Express vs. Peter Stack a judgment was entered against Peter Stack. In an attempt to collect the judgment, safe deposit boxes in which Peter Stack had no ownership were obtained, opened and inspected in an in-camera hearing (November 6, 1996) attended by Renee Jordon

(attorney for American Express) Gray Gibbs (attorney for Sandra Mann) and Judge Downey.

295.    Despite multiple pleadings protesting the above action, a corporate box owned by Sandra D. Mann, M.D., P.A. containing medically privileged material was opened.

296.    Peter Stack had no ownership in this box or the gold and silver coins seized. Documented with the court was a receipt for the purchase of the coins (March 16, 1980) five (5) years prior to marriage and a pre-nuptial agreement clearly evidencing that Peter Stack had no interest whatsoever in the coins.

297.    Jordon and her client American Express intentionally misrepresented the ownership of the coins in multiple pleadings to the court. Although this was clear, the court (Downey) looked the other way.

298.    There was also a fraudulent manipulation of the value of the coins (gold and silver) giving only SEVEN HUNDRED-FIFTY ONE DOLLARS ($751.00.00) for the value, when they were worth TWO THOUSAND FIVE HUNDRED ($2,500.00) or more.

299.    In the Order of Disposition of Property, July 16, 1998 the court (Downey) sanctioned theft, fraud and concealment by turning over the coins to American Express.

300.    The pattern of misrepresentation, illegal acts, failure of judges to follow the law, facilitating the fraud perpetrated on Sandra Mann continued again September of 2003.

301.    July, 2003- Bruce Wagner and Lindsey Schatzmann both attorneys stated they represented American Express although neither had put in a notice of appearance with the court.

302.    Schatzmann set a deposition in aid of execution.

A protective order was sent to the court August 25, 2003 by Peter Stack but it was returned to him unfiled.

303.    A notice of hearing was set August 29, 2003 for September 25, 2003 according to the docket by Peter Stack, but in fact Peter Stack never set the hearing. It was set by Schatzmann.

304.    The case was not open and the motion for a protective order did not exist since it was not re-filed by Peter Stack.

305.    October 3, 2003 the court denied the motion for a protective order that did not exist.

306.    December, 2003 the case was reopened with a Motion to Compel Deposition and the same day, Order Compelling Deposition was filed.

307.    This order was granted on a motion utilizing prior proceedings in an unopened case demanding attorney fees for writing a motion based on pleadings from an unopened case from an attorney who had never filed a notice of appearance or produced an engagement letter from American Express.

308.    It is not clear who filed the motion for protective order. It was not Peter Stack leaving Schatzmann or Baird who did it.

309.    Accepting reopening of the case December 12, 2003, the court (Baird) is covering up acts of malfeasance by officers of the court in an attempt to render prior misconduct moot in consort with those committing the criminal misconduct and abuse of process.

310.    The court (Baird) also was made aware of the theft of coins by fraud and concealment in the December 3, 1999 2nd DCA Mandate per curium affirmed but took no action.

311.    The court not only looked the other way, but followed the usual conspiracy of silence and took an active part in manipulation of the court record to cover the wrong doings of attorneys and to the determinant of the plaintiffs.

312.    The repeated pattern of racketeering activity occurred using the U.S. Mail with motions by the defendants and judges signing order and having them sent to the plaintiffs by U.S. Mail.

### MAIL FRAUD 18 U.S.C.A. §1341

In furtherance of their fraudulent schemes and at their discretion and/or control defendants caused to be sent thru the U.S. Mail, motions and court orders.

### PROHIBITED ACTS

### 18 U.S.C.A.§1962 (c)

313.  Defendants were all attorneys and members of the Florida Bar Association (Enterprise 1).  Defendants conducted and/or participated in the affairs of Enterprise 1 and through the pattern of racketeering activity described in paragraphs 286 thru 312 in violation of 18 U.S.C.A. § 1962 (c)

50

and 18 U.S.C.A. 1341 (mail fraud).  The defendants each committed, participated in or aided and abetted the commission of two or more racketeering acts described in paragraphs 286 thru 312.

<u>18 U.S.C.A. 1962 (a).</u>

313.   (a) The Florida Bar Association indirectly benefited from racketeering activity described in paragraphs 286 thru 313 and as described in paragraphs 8 thru 19 Scheme A, paragraphs 35 thru 44 Scheme D.

314.   The Florida Bar benefited from the racketeering described, by the resulting suppression of exposure to the public of how bad things really are with multiple attorneys including judges (all members of the Florida Bar) who ignore documented fraud in the plaintiffs cases without comment, investigation, or answers to the plaintiffs, in order to maintain their perception by the public that they are unimpeachable and they were protecting the public and the administration of justice.

315.   This is essential in order to retain their self-regulating status which would be in jeopardy if the public were to ask questions and because of this benefit to Enterprise 1, it enabled the defendants to perpetrate their frauds.

316.   American Express (Enterprise 3) directly benefited from the racketeering described in paragraphs 286 thru 313.  American Express and its attorneys each committed, participated in or aided and abetted the commission of two or more racketeering acts described in paragraphs 286 thru 313.

## INJURY TO BUSINSS OR PROPERTY

317. By reason of the conduct of defendants described in paragraphs 286 thru 316
above, the plaintiffs have been injured in their business or property including
but not limited to a lost asset.

318. Wherefore plaintiffs request that this court:

319. (A) Order defendants to pay the plaintiff, Sandra Mann, three (3) times the
money lost from taking her coins.

320. (B) Award plaintiffs cost involved in this lawsuit including attorney fees.

321. (C) Order such other relief as this court deems just.

3-14-2006

A. ELIZABETH SEAMANS
MY COMMISSION # DD 206672
EXPIRES: April 29, 2007
Bonded Thru Notary Public Underwriters

Date: 3·14·06

Pro Se

By: _____

PETER G. STACK
20 PINETREE COURT
PALM HARBOR, FL 34683
(813)857-5132

MAILING ADDRESS:

PETER G. STACK
POST OFFICE BOX 24507
TAMPA, FLORIDA 33623